FREDFRICK W. REIMER and another *v.* CHARLES NAGEL and another.

In an action to obtain the possession of personal property, (called "claim and delivery" in the code,) if it appear that the defendant has disposed of the property claimed, in the usual course of his business, *ante litem motam*, and not with intent to prevent the taking thereof by the sheriff, the order of arrest provided for in the 3d subdivision of § 179, as passed in 1849, will not be sustained.

Under the code, as since amended, this proposition is even more plainly correct.

It is doubtful whether in such case the action itself can be maintained.

THIS was an appeal from an order at special term denying the defendants' motion to vacate an order of arrest. The facts are stated in the opinion.

*P. T. Woodbury* and *F. H. Churchill*, for the defendants.

*Augustus F. Smith*, for the plaintiffs.

BY THE COURT. WOODRUFF J.—This is an action brought to recover the possession of personal property, under Chap. 2, Title VII. of the code of procedure, and therein entitled, "claim and delivery of personal property," and upon the return of the sheriff that the property had been "removed, concealed or disposed of, so that he could not take the same," &c.,

Reimer v. Nagel.

an order of arrest was issued pursuant to subdivision 3 of section 179 of the same title. The defendants being arrested, moved at special term to discharge the order of arrest, which motion was denied, and appeal is now made to the general term.

The goods in question consist of one cartoon of laces, sold by the plaintiffs to the defendants in December, 1850; and the plaintiffs claim to recover herein, upon the ground that the purchase was fraudulent; they having been induced to sell the goods by false representations made to them by the defendants, and that they are, therefore, entitled to rescind the contract and reclaim the goods.

There is great conflict in the affidavits presented, upon the question whether or not any fraud has been committed, the defendants having denied unqualifiedly that they were guilty of any falsehood or bad faith in the transaction. And I am by no means satisfied that the plaintiffs have sufficiently established facts which will, even on this ground, sustain the action; but if the validity of the order of arrest depended upon that question alone, I should feel inclined to retain the order of arrest until the question in dispute, which lies at the foundation of the plaintiffs' title, shall be submitted to a jury. But in relation to the following facts there appears to be no dispute:

The defendants were merchants and dealers in fancy goods, laces, &c., in this city, and purchased the goods, in the course of their business, for sale.

The goods in question were sold and delivered to them by the plaintiffs, on the 17th of December, 1850.

Shortly thereafter, or prior to the 18th of January, 1851, the defendants, in the usual course of business, sold the laces in question to their customers.

On the 18th of January, 1851, the defendants failed. And this suit was commenced on or about the 10th of April thereafter, under the code as passed in 1849; no demand of the goods having been made upon the defendants prior to the arrest.

Upon this state of facts, it is manifest that the sheriff *could* not find the goods to make delivery thereof to the plaintiffs,.

and the question thereupon arises: was the sale of the property by the defendants in the usual course of their business as merchants, and without any demand made of them by the plaintiffs, such a *removal* or *disposition* of the property as is contemplated by subdivision 3 of § 179, warranting an arrest?

It may, I think, be well doubted whether, under the facts stated, the plaintiffs have the first requisite to entitle them to the action, (vide § 206, subdivision 1,) viz., whether they are "*owners*" of the property, claimed, or lawfully entitled to the possession thereof. Without subscribing fully to the doctrine of *Maury* v. *Walsh*, 8 Cow. 240, which, in the broad language employed, has been the subject of severe criticism, (vide *Salters* v. *Everett*, 20 Wend. 275; *Ash* v. *Putnam*, 3 Hill, 306,) but which, nevertheless, has not yet been overruled; there is much reason and propriety in holding that the plaintiffs, by delivering the goods to the defendants as merchants, to be sold in due course of business from their store to customers, clothed them with such authority over the goods, or furnished them with such indicea of absolute ownership, that upon such sale by the defendants all title to reclaim the property was gone, and (however the plaintiffs were deceived into giving such confidence to the defendants) their remedy thereafter, if they repudiated the sale, was confined to an action against the defendants for damages. If this doubt prevail, then when this suit was commenced the plaintiffs were not owners nor entitled to the possession of the specific goods, and cannot maintain the action. I do not, however, rest my views upon this suggestion. The plaintiffs may, with some force, reply to it, that however such an argument may avail the bona fide purchaser, the defendants cannot set it up against those whom they are charged with defrauding.

But I cannot resist the conviction, that to entitle the plaintiffs to maintain the order of arrest, it must have been true, as a present fact, that the property claimed "*is detained by the defendants*," at the time the suit is commenced, or at all events, when the action is moved by the plaintiffs, or other assertion of their claim to the property is made.

To say that goods *are detained* by a defendant, when, in fact, they have been sold by him and have gone into use among consumers, and have perhaps been actually consumed by ordinary appropriation to the purposes for which they were adapted, seems to me little less than absurdity—*e. g.* to aver that flour sold to a baker, which he has baked and sold for food six months ago, "is wrongfully detained by him," or even that the plaintiff is the owner or entitled to the possession thereof," seems calculated to provoke a smile.

In such a case, an affidavit, complying with the requirements of § 207, asserting, in the present tense, that the property "is detained by the defendant," made by a plaintiff knowing that the flour had in fact been consumed by others, would be liable to jealous criticism, at least by a grand jury, and would, I think, require an ingenious fiction to justify it.

The *object* of the action—the characteristic which distinguishes it from an action for damages—is this, that it restores the goods to the possession of the party entitled. I can never believe that the legislature intended to apply it to a case in which such a restoration is confessedly impossible.

The whole scope of the chapter referred to, indicates that the legislature meant to apply it to a case of *actual* detention by the defendant, and not a fictitious or constructive one, founded on the mere fact that by the defendant's act the plaintiff had lost the possession.

Thus, as already suggested, § 207 is entirely in the present tense, and in terms relates to a state of things then existing, not already past.

By § 208 the requirement is to be addressed to the sheriff of the county *where the property claimed may be*, and he is to take it *from the defendant*. And so all of the subsequent provisions of the chapter treat of the defendant as in possession, of his right to retain such possession on giving the prescribed security, and of the ultimate and final delivery to and confirmation of the actual possession in one or other of the parties.

An examination of this chapter of the code, it appears to me, would not suggest to any mind that a plaintiff could make

the necessary affidavit to lay the foundation of the order to arrest, unless the goods are in fact in existence, and in the possession or under the control of the defendant.

The able review of the provisions of the chapter in question by Justice Sandford, in *Roberts* v. *Randall*, 3 How. Pr. Rep. 327; 3 Sand. S. C. R. 707, presents this view of its proper construction, and I deem it unnecessary to add any thing further than to declare my concurrence with the superior court in that opinion of the effect of that chapter.

I do not, however, deem it necessary to hold, that under the decisions made prior to the enactment of the code of procedure, replevin might not have been sustained after the defendant had parted with the possession of the property.

We are called upon to give a construction to a statute which, in a very important particular, is new. In a certain contingency it requires the arrest and imprisonment of the defendant, it may be for life, without any provision for his deliverance, unless he gives the security described in § 211 for the absolute delivery of the property to the plaintiff, if such return be adjudged ; and we are called upon to say, that this requirement is applicable to a case in which it is confessedly *impossible* for the defendant to perform the act by which such arrest may be avoided, and equally impossible for his sureties to perform the condition of their undertaking.

I cannot yield my assent to such a claim, unless the removal or disposition of the property is itself made to defraud the plaintiff and defeat his action. I think, therefore, the order should be reversed; and I express these views the more willingly, because the legislature, in their most recent change in the language of the code, have declared their intention in cases of this sort in terms not liable to the doubt which has been suggested regarding the meaning of the code as theretofore enacted. The right of the plaintiff to require the arrest is now made to depend entirely upon the intent with which the concealment, disposition or removal of the goods in question is made, and this makes the plain reading of the statute conform to the conclusion above stated.

Order reversed.